Filed 12/6/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| HOPE DICAMPLI-MINTZ, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S194501 |
| v. | ) | |
| | ) | Ct. App. 6 H034160 |
| COUNTY OF SANTA CLARA et al., | ) | |
| | ) | Santa Clara County |
| Defendants and Respondents. | ) | Super. Ct. No. 1-07 CV 089159 |
| | ) | |
| _____ | ) | |

Government Code[1] section 915, subdivision (a) (section 915(a)), establishes the manner of delivery of a claim against the government.  It requires that a claim be presented to a local public entity by "[d]elivering it to the clerk, secretary or auditor," or by mailing it to one of these officials "or to the governing body."  Section 915, subdivision (e) (section 915(e)), further provides that a misdirected claim "shall be *deemed* to have been presented in compliance" with section 915 if "[i]t is actually received by the clerk, secretary, auditor or board of the local public entity."  (§ 915(e)(1), italics added.)

Here, the Court of Appeal held that "a claim may substantially comply with the act, notwithstanding failure to deliver or mail it to one of the specified recipients, if it is given to a person or department whose functions include the

---

[1]     All further unspecified statutory references are to the Government Code.

1

management or defense of claims against the defendant entity." We reject this judicial expansion of the statutory requirements and affirm that a claim must satisfy the express delivery provisions language of the statute.

## I. BACKGROUND

On April 4, 2006, Dr. Bao-Thuong Bui and Dr. Abraham Sklar performed surgery on plaintiff Hope DiCampli-Mintz at Valley Medical Center (VMC), a hospital owned and operated by the County of Santa Clara (the County). In the recovery room, plaintiff complained of pain in her left leg, which appeared bluish and cold to the touch. An emergency tomography disclosed that her "left iliac artery" was "completely interrupted." Plaintiff was returned to surgery and ultimately discharged.

Later that year, plaintiff went to VMC's emergency department "in a great deal of pain." An emergency room physician told her that another procedure was required because blood vessels had been damaged in the first surgery.

Plaintiff retained counsel who prepared a letter for transmission to VMC, Dr. Bui, and Dr. Sklar, giving "notice, in accordance with Section 364 of the Code of Civil Procedure, that Hope DiCampli-Mintz will file suit against you for damages resulting from the personal injury of Hope DiCampli-Mintz." Code of Civil Procedure section 364 requires that a plaintiff give notice of an intent to sue to a health care provider 90 days before filing a negligence action.[2] The letter stated that defendants negligently performed surgery, interrupting blood flow to plaintiff's leg, then failed to repair the problem.

On April 3, 2007, plaintiff's counsel personally delivered copies of the letter to an employee of the medical staffing office in the hospital's administration

---

[2] Code of Civil Procedure section 364 is not part of the Government Claims Act (§ 810 et seq.). The notice of intent it mandates is a separate requirement.

2

building. The letters were addressed to the Risk Management Department at VMC, Dr. Bui, and Dr. Sklar.[3] While the letter included a request that it be forwarded to the recipient's insurance carrier, it did not request that it be forwarded to any of the statutorily designated recipients denoted in section 915.

It is undisputed that the letter was never personally served or presented, nor was it mailed to the county clerk or the clerk of the board. The parties likewise agree that plaintiff knew VMC was owned and operated by the County. The letter was later received by the Santa Clara County Risk Management Department by April 6, 2007.[4] On April 23, 2007, Dave Schoendaler at the County's Risk Management Department spoke with plaintiff's counsel by telephone. According to plaintiff's counsel, Schoendaler acknowledged receipt of the letter; orally opined that service on VMC required a tort claim which was late; questioned whether a tort claim was required as to Dr. Sklar and Dr. Bui and indicated that he would look into that; stated that plaintiff had an interesting case; mentioned a physical condition that put plaintiff at risk; and provided the name of the attorney handling the County's defense. Schoendaler did not mention that the letter failed

---

[3] Plaintiff's counsel also sent duplicate letters by certified mail.

[4] According to the County, the letters were addressed to the "Risk Management Department at the Valley Health Center Clinic at VMC." Plaintiff did not dispute this and added that the letter was also received by the "Santa Clara County Risk Management Department." At oral argument it was clarified that the "Santa Clara County Risk Management Department" and the "Risk Management Department at the Valley Health Center Clinic at VMC" are different entities.

The "Santa Clara County Risk Management Department" is a department within the County's Employee Services Agency and deals with legal claims against the County. The "Risk Management Department at the Valley Health Center Clinic at VMC" is responsible for such things as the hospital's quality assurance and its compliance with regulatory matters. For reasons set forth below, any differences are irrelevant because plaintiff failed to properly present her letter to a statutorily designated person, nor did any such designee actually receive the letter. (§ 915(a) & (e).)

3

to satisfy section 915's delivery requirements. Plaintiff never received written notice that her claim was untimely or presented to the wrong party.

On July 2, 2007, plaintiff filed a complaint naming Dr. Bui, Dr. Sklar, and VMC as defendants. As described by the Court of Appeal, "The complaint acknowledged that 'Plaintiff was required to comply with . . . [government claims statutes],' but asserted she was 'excused' from doing so because defendants 'failed to provide notice to Plaintiff as required by Government Code §§ 910.8, 911, 911.3, and therefore waived any defenses they may have had to the sufficiency of Plaintiff's claim (Notice of Intention to Commence Action) as presented.' "[5]

On August 29, 2007, the County[6] filed an answer denying plaintiff's allegations and asserting affirmative defenses, including that plaintiff "failed to comply with the provisions of the California [Government] Claims Act," and that her claims were "barred by the provisions of Government Code §§ 810 through 1000, inclusive."[7]

---

[5] Section 910.8 requires the board of a public entity, or its designee, to give a claimant notice of a defective claim. Section 911 provides if the board fails to provide a notice of insufficiency as required by section 910.8, the defect is waived. Section 911.3, subdivisions (a) and (b) require that the board, or its designee give written notice to the claimant that a claim was untimely. Failure to do so waives a timeliness defense. As later discussed, because plaintiff's claim was not presented to or actually received by the board or a person designated by it, sections 910.8, 911 and 911.3 are not applicable. (See *post*, pp. 10-12.)

[6] The Court of Appeal noted that the complaint was never amended to name the County as the proper defendant, although the parties have acted throughout the proceedings as if it were. The Court of Appeal treated this mistake as a harmless misnomer. (See *Plumlee v. Poag* (1984) 150 Cal.App.3d 541, 547; see also 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 477, pp. 605-606; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 1219, p. 654.) The parties do not dispute this issue and we need not address it.

[7] At some point, the parties stipulated to the dismissal of the suit against Dr. Bui and Dr. Sklar, agreeing that at all relevant times they acted within the course and scope of their County employment.

4

The County filed a motion for summary judgment, alleging that plaintiff failed to comply with the Government Claims Act because her claim was never presented to or received by a statutorily designated recipient as required by section 915.  In opposition, plaintiff argued that she had "substantially complied" with the Government Claims Act on April 3, 2007, by delivering the letter of intent to the Risk Management Department at VMC.  She also alleged that the letter was received by the Santa Clara County Risk Management Department by April 6, 2007, and that this department was the county department most directly involved with the processing and defense of tort claims against the County.

The trial court granted the County's summary judgment motion.  It held that the County made a sufficient showing of noncompliance, and that plaintiff could not avoid summary judgment because she failed to "raise a reasonable inference that her claim was actually received by the clerk, secretary, auditor or board of the local public entity within the time prescribed for presentation thereof" and she also failed to "establish waiver and/or equitable estoppel."

The Court of Appeal reversed.  It found that plaintiff had "substantially complied" with the presentation requirements of the Government Claims Act.  The Court of Appeal rejected other Court of Appeal cases holding that compliance is deemed satisfied only by actual receipt by the statutorily designated persons, under section 915(e)(1).

## II. DISCUSSION

### A.  The Government Claims Act

Suits for money or damages filed against a public entity are regulated by statutes contained in division 3.6 of the Government Code, commonly referred to as the Government Claims Act.  We have previously noted that "[s]ection 905 requires the presentation of 'all claims for money or damages against local public entities,' subject to exceptions not relevant here.  Claims for personal injury and

5

property damage must be presented within six months after accrual; all other claims must be presented within a year. (§ 911.2.) '[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . .' (§ 945.4.) 'Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.' [Citation.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738 (*City of Stockton*).)

Section 905 requires that, subject to exceptions not present here, "all claims for money or damages against local public entities" must be "presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910)" of the Government Code. " 'Local public entity' includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State . . . ." (§ 900.4.)

Section 915(a) provides, "A claim . . . shall be presented to a local public entity by either of the following means: [¶] (1) Delivering it to the clerk, secretary or auditor thereof. [¶] (2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office." Section 915(e)(1) clearly and narrowly sets forth how actual receipt may meet the presentation requirement: "A claim . . . shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section *if*, within the time prescribed for presentation thereof, any of the following apply: [¶] (1) It is *actually received* by the clerk, secretary, auditor or board of the local public entity." (Italics added.)

Even if the public entity has actual knowledge of facts that might support a claim, the claims statutes still must be satisfied. (*City of Stockton*, *supra*, 42

6

Cal.4th at p. 738.) "The filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an *element* that a plaintiff is required to prove in order to prevail." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767 (*Del Real*), italics added; *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209 (*Shirk*).)

A goal of the Government Claims Act is to eliminate confusion and uncertainty resulting from different claims procedures. (Recommendation: Claims Against Public Entities (Dec. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 1008.) As we pointed out in *City of Stockton*, *supra*, 42 Cal.4th at page 738, "[t]he purpose of the claims statutes is not to prevent surprise, but 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim.' [Citation.] The claims statutes also 'enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.' [Citations.]"

Moreover, the intent of the Government Claims Act is "not to expand the rights of plaintiffs against government entities. Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1242-1243.) The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity. (*Life v. County of Los Angeles* (1991) 227 Cal.App.3d 894, 901 (*Life*).)[8]

---

**8** In *Shirk*, *supra*, 42 Cal.4th at page 213, we summarized the public policies supporting strict application of the claims presentation requirements: "Requiring a

*(footnote continued on next page)*

7

### B. Application of the Government Claims Statute

Several points are important here. The County does not dispute that the content of the letter is sufficient to serve as a valid claim, nor does it dispute its timeliness. Plaintiff does not dispute that the County was the proper public entity where her claim should have been presented under section 915(a). The case stands or falls on whether presentation of plaintiff's letter of intention to someone other than the statute's designated recipients or the actual receipt of notice by a proper recipient, satisfies the prefiling claim requirement.

It is uncontested that the claim was never delivered or mailed to the "clerk, secretary or auditor" as required by section 915(a). Likewise, the "clerk, secretary, auditor or board" never actually received the claim. (§ 915(e)(1).) Thus, neither section 915(a)'s specific requirements for compliance, nor section 915(e)(1)'s provision deeming actual receipt to constitute compliance, were satisfied. Nevertheless, the Court of Appeal held that there was "substantial compliance." This was error.

---

*(footnote continued from previous page)*

[claimant] . . . to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] [It] also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement . . . thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because . . . public entities . . . will incur costs that must ultimately be borne by the taxpayers."

The proper construction of section 915 is dispositive. "In construing any statute, we first look to its language. [Citation.] 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] 'If the language permits more than one reasonable interpretation, however, the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' [Citation.]" (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379.) Also, a statute " 'must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.' " (*City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 858, quoting *DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 18.) A court may not, "under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.) Further, " '[w]e must assume that the Legislature knew how to create an exception if it wished to do so . . . . [Citation]' " (*Ibid.*)

The Court of Appeal erred by failing to adhere to the plain language of section 915. Instead, it rewrote the statute to read as the court believed it should provide.

Section 915(a)(1) reflects the Legislature's intent to precisely identify those who may receive claims on behalf of a local public entity. Section 915(e)(1) reflects the Legislature's intent that a misdirected claim will satisfy the

9

presentation requirement if the claim is "actually received" by a statutorily designated recipient. Thus, compliance with section 915(e)(1) requires actual receipt of the misdirected claim by one of the designated recipients. If an appropriate public employee or board never receives the claim, an undelivered or misdirected claim fails to comply with the statute. (*Life*, *supra*, 227 Cal.App.3d at p. 901.) This straightforward construction honors the statutory language and is consistent with the purpose of the claims statutes.[9]

While resort to extrinsic sources is unnecessary, our conclusion is consistent with the legislative history. In 1959, the California Law Revision Commission's (Commission) report found that there were conflicting claim presentation requirements for public entities throughout the state. The Commission urged that specificity and uniformity were necessary and recommended adoption of uniform procedures for certain claims against public entities. (See Recommendation and Study relating to The Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) pp. A-57 to A-62, A-122 (1959 Study).) The Commission reported, "Much unnecessary litigation has been devoted to resolution of technical issues relating to allegedly improper presentation of claims. . . . [A recurring question is] whether presentation to the wrong official satisfies the statute. Avoidance of these problems can be achieved in part by clear identification of the officer to whom such claims are required to be presented and by express authorization of mailed notice. In order to avoid doubts and to preclude such purely technical issues from interfering with expeditious handling of claims, however, it is recommended that express provision be made to cure minor

---

[9]     We need not determine whether section 915's use of the term "clerk" refers to the county clerk or the clerk of the board of supervisors. It is undisputed that the claim was not mailed, delivered to, or received by either clerk.

defects in the manner of service which do not prejudice the public entity." (*Id.* at p. A-122, fns. omitted.)

The Commission also referred to a New York law providing that, " '[I]f service of such notice . . . [is] not in compliance with the provisions of this subdivision, such service shall be deemed valid if such notice is *actually received* by such person.' " (1959 Study, *supra*, 2 Cal. Law Revision Com. Rep., at p. A-122, italics added.) In 1959, the Legislature acted on the Commission's recommendation and added section 714, the predecessor of section 915.[10] (Stats. 1959, ch. 1724, § 1, p. 4136.) "The scheme in effect today was established in 1963, when the Legislature combined the requirements for claims against local entities with those for claims against the state in part 3 of division 3.6 of title 1 of the Government Code. (Stats. 1963, ch. 1715, pp. 3369, 3372 et seq.)" (*City of Stockton*, *supra*, 42 Cal.4th at p. 739, fn. 4.)

It is logical to provide that actual receipt satisfies the claim presentation requirement. The goals of the claims statutes are to provide entities with sufficient information to investigate and appropriately resolve claims and to plan for potential liabilities. These goals are satisfied when an adequate claim is actually received by an appropriate entity representative. The Legislature retains authority to determine which representatives are appropriate. The Court of Appeal cannot

---

[10] Former section 714 provided, "A claim may be presented to a local public entity (1) by delivering the claim to the clerk, secretary or auditor thereof within the period of time prescribed by Section 715 or (2) by mailing the claim to such clerk, secretary or auditor or to the governing body at its principal office not later than the last day of such period. A claim shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided herein if it is *actually received by the clerk, secretary, auditor or governing body* within the time prescribed." (Stats. 1959, ch. 1724, § 1, p. 4136, italics added.)

11

override that determination simply because it concludes receipt by others should be considered sufficient.

The Court of Appeal placed substantial reliance on *Jamison v. State of California* (1973) 31 Cal.App.3d 513 (*Jamison*). *Jamison* proves too slender a reed to support the weight of the Court of Appeal's expansion. The *Jamison* holding was later repudiated by its own panel and is in conflict with more recent authority.

Jamison was injured in a traffic collision with a truck owned by the California Department of Water Resources. His lawyer filed a claim with the Department of Water Resources before filing suit. (*Jamison, supra,* 31 Cal.App.3d at p. 515.) The trial court dismissed the action for failure to comply with the Government Claims Act. (*Jamison,* at p. 515.) At the time, section 915, subdivision (c), a prior version of section 915(e), required that notice be filed with the State Board of Control and Jamison had failed to do so. (*Jamison,* at pp. 515-516.) The Court of Appeal concluded Jamison had substantially complied with the existing statute. It noted that most claim statute cases dealt with "substantial compliance" in disputes over whether the contents or form of the claim was adequate, not whether the filing was properly presented. (*Id.* at p. 516.) It then reviewed the few California cases involving "the question of filing a proper claim with the wrong governmental department or agency." (*Ibid.*)

The *Jamison* court drew several conclusions: (1) The statutory requirement is not met when a claim is filed with the wrong entity. (*Jamison*, *supra*, 31 Cal.App.3d at p. 517.) That principle is reflected in *Jackson v. Board of Education* (1967) 250 Cal.App.2d 856, 858-860, which held that a requirement to serve a local board of education is not satisfied by serving the municipality. (2) If a claim is filed with the proper entity but with the wrong statutory official of that

12

entity, the statute is satisfied if the claim is actually received by the statutory officer. (3) A complete failure to serve any responsible officer of the entity will not constitute substantial compliance. (*Jamison*, *supra*, 31 Cal.App.3d at p. 517.) As stated in *Redwood v. State of California* (1960) 177 Cal.App.2d 501, 503-504: "It has been repeatedly held that where the claims statute provides for the person upon whom the claim is to be served . . . service upon another is insufficient."

The *Jamison* court went on to draw a fourth conclusion that it phrased as follows: "Service upon any responsible official of the entity, but not the statutory officer, is sufficient if the party served has the duty to notify the statutory agent." (*Jamison*, *supra*, 31 Cal.App.3d at p. 517.) *Jamison* cited no California authority for this proposition, referring instead to cases from Indiana (*Galbreath v. City of Indianapolis* (Ind. 1970) 255 N.E.2d 225) and the District of Columbia (*Stone v. District of Columbia* (D.C. Cir. 1956) 237 F.2d 28 [applying D.C. law]). (*Jamison*, *supra*, 31 Cal.App.3d at p. 517.) The *Jamison* opinion does not reveal whether the statutes at issue in those cases bore any similarity to the California statutory scheme.

As justification for importing its fourth conclusion into California law, the *Jamison* court stated, "Certainly, any responsible officer or employee of a major state agency knows, or should know, that if a substantial claim for damages is presented that it should be forwarded to the Board of Control. In the event the officer or employee actually receiving the claim does not know the proper agency, then a simply [*sic*] inquiry to the Attorney General's office would result in advice as to the proper agency." (*Jamison*, *supra*, 31 Cal.App.3d at p. 518.) The court cited no statutory authority supporting the duty it created. Other California appellate courts have refused to follow it. (*Del Real, supra,* 95 Cal.App.4th 761; *Life*, *supra*, 227 Cal.App.3d 894.)

13

In *Life*, *supra*, 227 Cal.App.3d 894, the plaintiff was involved in an automobile accident. He was treated by medical staff at the county medical center that allegedly committed negligence. The plaintiff retained counsel who sent a personal injury claim to the medical center's legal department. (*Id*. at p. 897.) The legal department was not the proper body to receive the plaintiff's claim. The plaintiff later retained new counsel who filed a late claim with the county board of supervisors. (*Ibid.*)

After the county denied the claim as untimely and his application for leave to present a late claim was also denied, Life filed a complaint against the county alleging medical negligence. (*Life*, *supra*, 227 Cal.App.3d at p. 897.) The county moved for summary judgment on the ground that Life had failed to timely present a claim. (*Id*. at p. 898.) The Court of Appeal affirmed, holding that Life's presentation of the claim to the hospital's legal department was insufficient. Compliance with section 915 would have occurred only if the misdirected claim was " '*actually received* by the clerk, secretary, auditor or board of the local public entity. . . .' " (*Life*, at p. 900.)

The *Life* court found *Jamison* unpersuasive because it failed to follow the statutory requirement that a misdirected claim be "actually received" by the designated party. (*Life*, *supra*, 227 Cal.App.3d at p. 901.) The court also remarked that "*Jamison's* reliance on a public entity's internal transmittal of a claim conflicts with section 915, which requires the *claimant* to file with the appropriate official or board." (*Ibid*.) The court persuasively concluded that "[b]y focusing on the duty of a public employee in receipt of a claim to forward the claim to the proper agency, *Jamison* inappropriately shifts responsibility for filing a claim with the proper official or body from the claimant to the public entity." (*Ibid*.)

14

In *Del Real*, *supra*, 95 Cal.App.4th at page 764, the claim arose from an automobile accident with a Riverside police officer, Eric Charrette. Del Real's attorney wrote to Charrette seeking his account of the accident and requesting that the letter be forwarded to Charrette's insurance company. The city attorney responded to the letter, informing counsel that it represented Charrette and that he would not provide a statement. The letter also stated that any further contact with Charrette should be made through the city attorney's office. (*Ibid.*) Del Real later sued Charrette and the City of Riverside. Defendants moved for summary judgment alleging Del Real failed to satisfy the Government Claims statutes. Del Real urged in reply that her letter to Charrette constituted a timely claim. She argued that "even if the letter was not actually received by the appropriate person or body, it should have been," citing *Jamison* for the proposition that Charrette had a duty to transmit the letter to the appropriate recipient. (*Del Real*, at p. 770.)

In addition to holding that the letter did not contain the contents of a proper claim, the Court of Appeal held that because the letter was not properly directed it failed to comply with section 915. (*Del Real*, *supra*, 95 Cal.App.4th at p. 770.) In rejecting Del Real's argument, the Fourth District Court of Appeal stated, "we have reconsidered our earlier decision in *Jamison* and, as did the court in *Life v. County of Los Angeles*, *supra*, 227 Cal.App.3d at pages 900-901, we find that it is at odds with section 915, subdivision (c). We therefore decline to follow it." (*Ibid.*) We agree with the holdings in *Life* and *Del Real*. Their application of the compliance doctrine is consistent with the language of section 915(e)(1) requiring actual receipt by the statutorily designated recipient. *Jamison* is unpersuasive because it fails to follow the statutory language specifically identifying who must actually receive a claim. Finding compliance when any agency employee is served exponentially expands the scope of the statute. By placing a duty on a public employee who receives a misdirected claim to forward it to the proper

15

agency, *Jamison* improperly shifted the responsibility for presenting a claim from the claimant to the public entity. (See §§ 910, 915.)

Moreover, the County argues persuasively that, in addition to contravening section 915's plain language, the *Jamison* rule creates uncertainty about how and where claims must be delivered. Misdirected claims may be received by various departments or employees and forwarded to multiple people and places, making it difficult to determine whether the claims were actually delivered to, or received by, a department or employee charged with the overall management of claims against the county. The question of when a claim is actually received and whether a specific department or employee managed claims against a public entity would also be fodder for litigation. This result is contrary to the Government Claims Act's goal of eliminating uncertainty in the claims-presentation requirements. Accordingly, we disapprove *Jamison v. State of California*, *supra*, 227 Cal.App.3d 513.

The Court of Appeal below further relied on cases decided before the enactment of section 915 or its predecessor, section 714.[11] When these cases were decided, claims against the state, local, and municipal governments were governed by numerous state statutes and local ordinances. Recognizing this Byzantine claims system, the Legislature standardized the procedure by enacting the Government Claims Act. In doing so, it replaced more than 150 separate procedures for directing claims against local governmental entities. (*Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 246.) Because of this comprehensive

---

[11]     *Insolo v. Imperial Irr. Dist.* (1956) 147 Cal.App.2d 172; *Peters v. City and County of San Francisco* (1953) 41 Cal.2d 419; and *Los Angeles Brick & Clay Products Co. v. City of Los Angeles* (1943) 60 Cal.App.2d 478, 486.

16

change in the statutory procedures, the early cases cited by the Court of Appeal are inapposite.

The Court of Appeal also erred by relying on *Elias v. San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 75, and *Carlino v. Los Angeles County Flood Control Dist.* (1992) 10 Cal.App.4th 1526, 1533. These cases hold that when the governing body of one public entity is also the governing body of another public entity, a claim against the subordinate entity that is delivered to the governing body constitutes substantial compliance with the claims statute. (*Elias*, *supra*, 68 Cal.App.3d at pp. 75-77; *Carlino*, *supra*, 10 Cal.App.4th at pp. 1533-1534. That is not the case here.[12]

---

[12] The Court of Appeal additionally relied on out-of-state cases. (*Shehyn v. District of Columbia* (D.C. 1978) 392 A.2d 1008; *Stone v. District of Columbia, supra,* 237 F.2d 28, 29-30 [applying D.C. law]; *Galbreath v. City of Indianapolis, supra,* 255 N.E.2d 225; *Coghill v. Badger* (Ind. Ct.App. 1981) 418 N.E.2d 1201, 1206, fn.3; *Hawkeye Bank v. State* (Iowa 1994) 515 N.W.2d 348, 350; *Webb v. Highway Div. of Oregon State Dept. of Transp.* (Or. 1982) 652 P.2d 783, 784.)

Plaintiff also cites numerous out-of-state cases. (*Finnie v. Jefferson County School District* (Colo. 2003) 79 P.3d 1253; *Robinson v. Washington County* (Me.1987) 529 A.2d 1357; *Hansen v. City of Laurel* (Md. Ct.Spec.App. 2010) 996 A.2d 882, 891; *Kelly v. City of Rochester* (Minn. 1975) 231 N.W.2d 275, 276; *Kirkpatrick v. City of Glendale* (Mo. Ct.App. 2003) 99 S.W.3d 57; *Ferrer v. Jackson County Board of Supervisors* (Miss. 1999) 741 So.2d 216; *Myears v. Charles Mix County* (S.D. 1997) 566 N.W.2d 470; *Mount v. City of Vermillion* (S.D. 1977) 250 N.W.2d 686.)

We find these authorities unpersuasive. Neither the Court of Appeal nor plaintiff explain how the claim statutes at issue in these cases were consistent with California's Government Claims Act.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** DiCampli-Mintz v. County of Santa Clara
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 195 Cal.App.4th 1327
**Rehearing Granted**

_____

**Opinion No.** S194501
**Date Filed:** December 6, 2012
_____

**Court:** Superior
**County:** Santa Clara
**Judge:** William J. Elfving

_____

**Counsel:**

Campbell, Warburton, Fitzimmons, Smith, Mendell & Pastore, J. Michael Fitzsimmons and Lisa Jeong Cummins for Plaintiff and Appellant.

Cheong, Denove, Rowell & Bennett and John D. Rowell for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Miguel Marquez, County Counsel, Lori E. Pegg, Acting County Counsel, Marcy L. Berkman and Melissa R. Kiniyalocts, Deputy County Counsel, for Defendants and Respondents.

Stephen D. Underwood; Michael M. Youngdahl and Jordan Sheinbaum for CSAC Excess Insurance Authority, California League of Cities and California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lisa Jeong Cummins
Campbell, Warburton, Fitzimmons, Smith, Mendell & Pastore
64 West Santa Clara Street
San Jose, CA  95113-1806
(408) 295-7701

San Francisco, CA  94105
(415) 538-2320

Melissa R. Kiniyalocts
Deputy County Counsel
70 West Hedding Street, 9th Floor, East Wing
San Jose, CA  95110-1770
(408) 299-5900